■ The People of the State of New York, Respondent, v Nelson Corales, Appellant. — Judgment of the Supreme Court, New York County (Lang, J., at suppression hearing; Shainswit, J., at *Wade* hearing; and Dennis Edwards, Jr., J., at trial and sentence), rendered February 6, 1979, convicting defendant of manslaughter in the first degree and sentencing him to a term of imprisonment of from 12½ to 25 years, affirmed. Our dissenting brother would suppress the gun, established by ballistics tests to be the weapon which fired the fatal shots, upon the ground that the back-up evidence necessary to establish probable cause was not presented at the suppression hearing (*People v Havelka,* 45 NY2d 636; *People v Lypka,* 36 NY2d 210). We disagree. Although Police Officer Selletti received the information which led to defendant's arrest via a police radio message from Police Officers Brandefine and Tortora, the latter could add nothing to the testimony of Selletti, since the information possessed by them was based upon hearsay derived from Davila, who reported that a man had been shot. The subsequent description given by Davila, again conveyed to Selletti by radio message, that two male Hispanics, the taller one wearing a flowered shirt, the shorter wearing a tee shirt with a number on it, was not disputed at the suppression hearing, although question was raised as to which of the two was wearing the tee shirt at the time of apprehension. It is this failure to dispute the description given by Davila, other than which of the two was wearing the tee shirt, which distinguishes this case from both *Lypka* and *Havelka*. In *Lypka,* the police relied upon consent to justify the search. There the defendant, his brother and their parents testified that the "consent" was no more than a submission to police authority. By consequence the prosecution was required to come forward not only to show that they had received information establishing probable cause from the police authorities of a neighboring State, but that the information received was reliable. In *Havelka* the defendant, through the testimony of a member of the "Tribe", sharply disputed the circumstances of the seizure and search. The police were thereupon called upon to come forward with proof establishing their right to conduct the search. Since they failed to do so, the motion to suppress was granted. Thus, in each of these cases there were fact questions which were required to be decided before the legal issue of "probable cause" could be determined. In the case before us, however, the issue is wholly different. The information upon which the seizure and search was made was uncontested by defendant. There was no request by experienced counsel for defendant that Brandefine, Tortora or Davila be produced. The question here raised is whether that information at the disposal of the apprehending officers supplied a solid basis, i.e., probable cause, for the seizure of defendant, handcuffing him, patting him down and finding the weapon in his sock. The suppression court held that it warranted a stop and frisk. We go further and hold that it supplied probable cause for a full-blown search (*People v Ponder,* 54 NY2d 160). We think it appropriate to note one further point. At the *Wade* hearing held subsequent to the suppression hearing, all of the prosecution witnesses involved in the suppression issue testified. The prosecution produced Davila, who conveyed the information of the shooting and the description to Police Officers Brandefine and Tortora,

whose radio messages alerted Selletti and Pacone, who apprehended defendant, to the direction taken by him as well as a description of him. They were all subject to cross-examination. If defendant felt that the testimony of any of them was such that it warranted a reopening of the suppression hearing he could have moved for that relief. He is not entitled to a reversal of his conviction simply because the proof which he now contends should have been produced at an earlier hearing, but which he did not then demand, was produced at a later hearing, but still in advance of trial and while he still had the opportunity to seek suppression based on that evidence. Concur — Birns, J. P., and Bloom, J.; Sandler, J., concurs in a separate memorandum; Silverman, J., concurs in the memorandum decision of the court and also concurs separately in a memorandum; and Carro, J., dissents in a memorandum all as follows.

Sandler, J. (concurring). The central reality that emerges from an examination of the pretrial hearings is that defendant, carrying concealed on his person the murder weapon which had been discharged a short while before, was apprehended by police officers who responded to fast-moving developments in an exigent situation precisely as they should have and in total conformity with their responsibilities as well as with the Constitution and the law. Nonetheless, as effectively pointed out in the dissenting opinion, a substantial legal question is presented by the failure of the People in the suppression hearing to introduce testimony from the officer whose radio communication resulted in the apprehension of the defendant or to call the civilian witness who was the original source of that information. In the absence of such testimony, it seems clear that the evidence at the suppression hearing failed to establish probable cause for the defendant's arrest. (*People v Lypka,* 36 NY2d 210.) This was apparently the view also of the hearing Judge who specifically rested his denial of the motion to suppress on the finding that what had occurred prior to the discovery of the gun was a "stop and frisk" rather than an arrest. Notwithstanding that the defendant and his companion were handcuffed prior to the frisk, this conclusion by the hearing Judge does not seem to me wholly unsupportable in a situation in which the police officers had reason to believe that they were searching persons who had only moments before shot another person. Nonetheless, I am reluctant to rest an affirmance here on a finding that all but eliminates the distinction between an arrest and a stop, particularly in view of the candid testimony by the police officer that he and his brother officer had "apprehended" the two men. Assuming that the suppression minutes in fact disclosed an arrest for which probable cause was not established, and reserving for separate consideration the issue raised by the testimony at the later *Wade* hearing, the legal issue presented is one that would have been resolved prior to *People v Havelka* (45 NY2d 636), by remanding for a further hearing at which the District Attorney might present the additional witnesses. Indeed, the Court of Appeals itself, in *People v Lypka* (*supra*), followed precisely that route. However, in *Havelka* the court sharply limited the discretion of appellate courts to remand for further hearings in suppression cases in which witnesses critical to a favorable determination to the People had not been originally produced. The limitation set forth in *Havelka* is less sweeping, however, than that suggested in the dissenting opinion. The court's primary concern was that "[t]ailoring the evidence at the rehearing to fit the court's established requirements, whether done unconsciously or otherwise, would surely be a considerable danger." (*People v Havelka, supra,* at p. 643.) The court went on to note, however, that there were situations, detailed in the opinion, in which "the risk of the introduction of distorted testimony at a rehearing is minimal." (*Supra,* at p 644.) The circumstances of this case disclose precisely such a situation in which the risk of

tailoring the evidence is minimal. At the *Wade* hearing conducted some months after the suppression hearing, the People called as witnesses the civilian whose report to the police provided the basis for the radio communication, the officer who transmitted the radio communication and his brother officer. The testimony of these three witnesses at the *Wade* hearing clearly established that there was indeed probable cause to arrest the defendant and his companion. Each witness testified at length with regard to the events critical to the radio communication. Each was cross-examined at length. The trial court found their testimony credible and indeed it so appears from the record. What is significant with regard to this testimony in terms of the *Havelka* rule is that it was offered at a time when there was no motive whatever to distort the testimony to conform to a disclosed judicial requirement. On the contrary, the suppression issue had been decided favorably to the People. There is no suggestion at all that the evidence was elicited in an effort to fill in what was then perceived to have been a gap in the gun suppression hearing. The remaining question then is whether the appropriate response to this factual pattern, assuming that the hearing court erred in its original determination after the gun suppression hearing, is to hold the appeal in abeyance to provide the defendant an opportunity to cross-examine these witnesses in the context of a suppression hearing. No such request has been made by the defendant on this appeal, and I see no persuasive reason to follow that course without a request in view of the comprehensive, detailed nature of the testimony given at the *Wade* hearing and the length and meticulousness of the cross-examination on points directly germane to the issues before us. Accordingly, and notwithstanding my doubts as to the correctness of the hearing court's determination at the end of the suppression hearing on the record as it then stood, I join in affirming for the reasons indicated above.

Silverman, J. (concurring). I agree that the judgment should be affirmed; and I agree with what is said in the majority memorandum. I add the following comments: The distinctive characteristic of this case as to the police conduct is the exigent circumstances. The officers who made the stop had received an emergency radio message "Man shot, 95 Clinton Street, requesting an ambulance." As the Court of Appeals said: "There is a difference of significant degree between a report only that a person has a gun in his possession and another report that a person not only has a gun but that he has just used it for the commission of a crime." (*People v Green*, 35 NY2d 193, 196.) The officers received a second message with a description of the perpetrators and their clothing and that they had been seen heading east on Delancey Street and north on Attorney Street. The officers proceeded to Attorney Street and there — a block or two from the scene of the shooting — they saw two men who fit the description, even to the rather striking clothing. Clearly they had a right, and indeed a duty, to stop those men. Clearly, warned there had been a shooting, they had a right to protect themselves by an immediate frisk. That frisk disclosed a gun. Obviously they had to take the defendant into custody. As the dissent points out, the Court of Appeals has indicated a strong preference, if not an unbending requirement, that the officers who sent the radio message as well as the officers who had received it should testify at the hearing. In fact the sending officers did testify at a pretrial suppression hearing, which, however, was the *Wade* part of the hearing rather than the *Mapp* part. But even without that, what could the officers who sent the message have said that would change the facts that justified the officers' stop and frisk? Whatever they could say it would remain true that there was a message that a man was shot by described perpetrators wearing distinctive clothes whom the officers saw within a block and one half and within minutes of the incident. Every criminal

case depends on its own facts. On the facts of this case, the officers acted properly and correctly, the seizure was proper, and the judgment should not be reversed and the weapon suppressed because of the failure of the District Attorney to call at the *Mapp* hearing some witness whose testimony could not change the controlling facts.

Carro, J. (dissenting). Police Officers Selletti and Pacone, assigned to the Seventh Precinct, were on radio motor patrol on August 15, 1977 at about 7:30 P.M. They received an emergency radio message stating in substance, "Man shot, 95 Clinton Street, requesting ambulance". They proceeded to an ambulance, about a block away, and directed it to the scene of the shooting. As they followed it, they received a second radio message to the effect that the two perpetrators of the shooting were male, Hispanic, one wearing a "numbered" shirt; the other wearing or carrying a flowered print shirt; heading east on Delancey Street and north on Attorney Street. The officers immediately proceeded towards Attorney Street, where they observed the defendant and another, who fit the broadcast description. They got out of the vehicle and, at gunpoint, directed the two men to halt. Selletti ordered the defendant to put his hands up against the wall, handcuffed him and then frisked him, finding a revolver in his sock. The defendant subsequently moved to suppress the weapon. On the hearing of the motion, the People offered only the testimony of Officer Selletti, who received the radio communications. They chose not to offer the testimony of the officer (also assigned to the Seventh Precinct) who sent the communications or of the civilian witness who supplied information, although both were available. The testimony received at the hearing and the court's findings of fact, which the testimony supports, are summarized above. In our analysis of the legal issues presented by these facts, we may not proceed beyond the threshold question of whether probable cause was established at the suppression hearing. We are limited in our scope by the *Lypka-Havelka* line of cases (*infra*). Whether evidence amounting to actual probable cause was available to the People through other witnesses, or whether an "arrest" or "stop and frisk" was made or justified pursuant to that evidence, is outside that scope. "A police officer is entitled to act on the strength of a radio bulletin * * * from a fellow officer * * * and to assume its reliability * * * It follows that where the bulletin or alert, prima facie, furnishes probable cause, a reasonable search is permissible. In such circumstances the sender's knowledge is imputed to the receiver and, when the receiver acts, he presumptively possesses the requisite probable cause to search". (*People v Lypka,* 36 NY2d 210, 213.) Here, where the radio bulletin advised the receiving officers that the perpetrators of a shooting were proceeding along certain streets, the officers, coming upon two men fitting the radioed description, presumptively possessed probable cause to believe those two men had perpetrated the crime and presumptively possessed the requisite probable cause to search them. Under these circumstances it was reasonable to approach them with guns drawn and to handcuff them. However, "The presumption is not irrational and may be rebutted * * * But where on a motion to suppress, a challenge to the receiver's action is made, the presumption of probable cause that originally cloaked that action disappears from the case." (*People v Lypka, supra,* pp 213-214.) "But on a motion to suppress, the challenged police conduct can be sustained only by proof that the sender actually possessed the requisite knowledge or that the personal observations of the receiving officer justified the search * * * Assuming in this case that the police communication prima facie supported the police action taken, it was nevertheless incumbent on the People to produce the sending officer * * * at the suppression hearing". (*People v Havelka,* 45 NY2d 636, 641.) The People failed to produce the sending officer, or any witness

whose testimony could have made a showing of probable cause. They only, in effect, repeated the broadcast radio bulletin for the court. Neither did Selletti's personal observations justify the police conduct. The presumption of probable cause thereupon disappeared from the case, and the motion should have been granted. Nor should the People be granted a rehearing to attempt to accomplish what should have been accomplished at the first hearing. They had a full and fair opportunity to present evidence on the issue of the existence of probable cause. "The original suppression hearing had been concluded. No contention is made that the People had not had full opportunity to present evidence * * * There was no justification here to afford the People a second chance to succeed where once they had tried and failed". (*People v Bryant,* 37 NY2d 208, 211.) "[I]f the People had a full opportunity to present their case at the original hearing, and failed through their own neglect, they are not entitled to try again when the defect is discovered on appeal". (*People v Payton,* 51 NY2d 169, 177.) *Havelka* instructs us (at pp 643-644), that "Denial of a rehearing under these circumstances accords with a system that offers a single opportunity for the presentation and resolution of factual questions. If such a practice were not followed, the defendant, having prevailed at the hearing, would be haunted by the specter of renewed proceedings. Success at a suppression hearing would be nearly meaningless, for a second and perhaps a third hearing, could later be ordered. It is of equally great concern that a perfunctory remand would magnify the potential for abuse and injustice. 'A remand with the benefit of hindsight derived from an appellate court opinion offers too facile a means for establishing probable cause after the event' (*People v Hendricks,* 25 NY2d 129, 138). Tailoring the evidence at the rehearing to fit the court's established requirements, whether done unconsciously or otherwise, would surely be a considerable danger. A procedure which fails to shield a criminal defendant from abuses so inimical to the rights guaranteed him should not be tolerated." The majority attempts to place the burden of proof as to probable cause at the suppression hearing on the defendant. It is not incumbent upon him to make out the People's case. He has no obligation to dispute any aspect of their evidence; to tell them which witnesses to call; to call those witnesses on his own behalf; or to point out the deficiencies in their evidence. Nor may these deficiencies be supplied by use of a subsequent *Wade* hearing (held, in this instance, some six months later) (see *People v Havelka, supra*). I would grant the motion to suppress and remand for further proceedings.