Meyer, J.
(dissenting). In my view the use by a prosecutor of peremptory challenges systematically and without apparent reason to exclude all blacks on the panel from the petit jury before which is to be tried a black defendant charged with robbing a white victim violates the Sixth Amendment guarantee of a fair trial by an impartial jury. I, therefore, dissent.
Defendant, a black man, was indicted for first degree robbery. The complainant was a white man. During selection of the trial jury, after the prosecution had exercised 11 of its 15 peremptory challenges, defendant moved for a mistrial on the ground that the prosecutor had by peremptory challenge excluded all seven blacks and the one Hispanic who had been drawn as prospective trial jurors up to the time the motion was made. In the course of argument of the motion, defendant’s attorney asked for a hearing at which the prosecutor would testify concerning the grounds for the challenges. The Trial Judge denied the motion and thereafter filed an opinion (104 Misc 2d 782) in which he reasoned that the “potential affinity” between a defendant and a juror who shares the defendant’s background justified the peremptory challenges exercised by the People and that under Swain v Alabama (380 US 202, 222): “In light of the presumption of regularity and the historic immunity from inquiry concerning the use of peremptory challenges, it is inappropriate to inquire into a party’s motives solely on the basis of the manner in which peremptory challenges *552 have been exercised in a single case” (104 Misc 2d, at p 784). The Appellate Division affirmed, without opinion.[1]
Swain, upon which the majority and the courts below so heavily rely, was decided solely on equal protection grounds. Acknowledging that jurors “ ‘should be selected as individuals, on the basis of individual qualifications, and not as members of a race’ ” (380 US, at p 204), and that nothing in the Constitution of the United States requires the grant of peremptory challenges {id., at p 219), the Supreme Court held that to subject the prosecutor’s judgment in any given case to scrutiny for reasonableness and sincerity would establish a rule wholly at odds with the peremptory challenge system. Excusal of blacks on the basis of their potential affinity for a black defendant, it reasoned, did not violate the equal protection clause of the Fourteenth Amendment; such a violation could be established only if purposeful discrimination by State officials was shown (id., at pp 219-224) as when “the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries” (id., at p 223).[2]
Not addressed by Swain, which was decided prior to the holding in Duncan v Louisiana (391 US 145) that the Fourteenth Amendment made applicable to the State the Sixth Amendment’s guarantee of trial by an impartial jury, was the effect of the latter provision. The Supreme Court’s subsequent holding in Taylor v Louisiana (419 US *553 522) that the Sixth Amendment requires a jury pool made up of a representative cross section of the community has raised the question whether the court when confronted by the situation of the present case, involving not the pool but the petit jury itself, will adhere fully to its Swain ruling. At least one court (People v Payne, 106 Ill App 3d 1034, 1042) has concluded, as do I, that Duncan and Taylor compel a result different from Swain.
In Taylor v Louisiana (supra), the Supreme Court construed the Sixth Amendment to require a pool of jurors representing a fair cross section of the community. The purpose of the fair cross section requirement is to assure that the jury reflects the broad range of human experience. But a petit jury from which all members of defendant’s race have been purposely excluded is not a petit jury “ ‘representative of a cross section of the community who have the duty and the opportunity to deliberate’ ” (Taylor v Louisiana, 419 US 522, 528, supra, quoting Apodaca v Oregon, 406 US 404, 410-411 [plurality opn]; see Williams v Florida, 399 US 78, 100). Indeed, as the Supreme Court has noted in another context, such a procedure “destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process” (Rose v Mitchell, 443 US 545, 555-556). Nor is such a jury impartial, even though each of its members considered individually may be, for as stated by Justice Thurgood Marshall, concurring in Peters v Kif (407 US 493,503) and quoted with approval in the majority opinion in Taylor v Louisiana (419 US 522, 532, n 12, supra): “When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented.”
It is no answer to suggest, as does the majority, that so to hold is inconsistent with the legislative definition of a peremptory challenge as “an objection to a prospective *554 juror for which no reason need be assigned” (CPL 270.25, subd 1). Nor, contrary to the majority’s suggestion (at p 546), does so holding require a prosecutor to prove bias or even assign a reason for each peremptory challenge. What such a rule would do, rather, and all that it would do, would be to call upon a prosecutor who had so exercised his peremptories as to exclude from the petit jury all members of defendant’s race and thus evidenced his or her intention to have defendant tried before a racially imbalanced jury to offer reasonable explanations for the various challenges grounded in a reason other than race. To the extent that CPL 270.25 (subd 1) appears to be inconsistent with such a rule it must, on familiar principles, be construed so as to avoid inconsistency with the Sixth Amendment (cf. People v Thompson, 79 AD2d 87, 109, n 20, supra), for the fair cross section-impartiality requirement is meaningless if in any case involving a defendant of a given race the prosecutor can intentionally and systematically exclude all members of that race without cause.
This does not mean that a prosecutor may never exercise a peremptory challenge against a black in a case involving a black defendant. Peremptory challenges are intended to permit elimination from the jury of persons whose bias is suspect but cannot be proven, to assure that those who ultimately constitute the petit jury “will decide on the basis of the evidence placed before them, and not otherwise” (Swain v Alabama, 380 US, at pp 211-212, 219, supra). But that does not provide carte blanche to exclude all blacks solely because they are black. Even in a case in which the testimony is expected to reveal that a key witness has referred to defendant as “the nigger”, a prosecutor may not exclude all blacks through the exercise of peremptory challenges. Rather his obligation to maintain the fair cross section diversity of the petit jury requires voir dire inquiry by him of black prospective jurors concerning whether they will be able to weigh objectively the testimony of a witness who used such a racial epithet (People v Johnson, 22 Cal 3d 296).
To hold otherwise is to sanction under the guise of fairness or tradition, or both, deliberate discrimination by a State official. There can be only two explanations for a *555 prosecutor’s challenge of all the members of the defendant’s race. First, the prosecutor might have legitimate reasons to doubt the impartiality of each individual. If that be the case, however, the State will not be harmed if he is asked to articulate those reasons and justify the challenges.[3] The only other possible explanation for the prosecutor’s elimination of all blacks from the jury is his mistrust of the ability of blacks, as a group, to be impartial. But the corollary of this view, in a case like this where the complainant and defendant are of different races, is that whites cannot be trusted either.[4] The result is that the defendant, unable to remove whites from the jury, is deprived of an impartial jury. As the Supreme Judicial Court of Massachusetts put it in Commonwealth v Soares (377 Mass 461, at pp 487-488): “Given an unencumbered right to exercise peremptory challenges, one might expect each party to attempt to eliminate members of those groups which are predisposed toward the opposition. However, when the defendant is a minority member, his attempt is doomed to failure. The party identified with the majority can altogether eliminate the minority from the jury, while the defendant is powerless to exclude majority members since their number exceeds that of the peremptory challenges available. The result is a jury in which the subtle group biases of the majority are permitted to operate, while those of the minority have been silenced.”
The practical difficulties of according a defendant such a right are exaggerated by the majority. First, as to the voir dire itself, the prosecutor who must look at jurors as individuals rather than members of a group would be in no different position than his adversary is now. Faced with more veniremen of the victim’s group than he can excuse, *556 the defense attorney must find an individual basis for each challenge. I do not doubt that prosecutors are equal to the same task and can perform it without excessively delaying the trial. Second, expeditious procedures can easily be developed for hearing a motion for a mistrial on this ground. The Second Department’s proposed procedure, for example, depends to a large extent upon the trial court’s observation of the voir dire. In most cases, the argument of counsel, the prosecutor’s explanation and the court’s observation will be sufficient to decide the motion. “Only in the unusual case, if at all, would it appear that a hearing would be necessary” (People v Thompson, 79 AD2d, at p 109).
It is not necessary to spell out in meticulous detail the exact procedure to be followed in hearing such motions for one to recognize that the potential for delay of the judicial process can never be so harmful to the institution as is the violation of the Sixth Amendment’s impartial jury requirement sanctioned by allowing the exercise of peremptory challenges solely on the racial basis of “potential affinity”. A verdict which is acceptable to whites but not to blacks is not the verdict of an impartial jury. The defendant’s motion for a mistrial should not have been denied without a statement by the court of his observations or an explanation from the prosecutor of his reasons for challenging the eight minority jurors.
There should be a reversal and a new trial.[5]

. The inconsistency between that affirmance and the earlier opinion of the same department in People v Thompson (79 AD2d 87, app withdrawn 55 NY2d 879) which after extensive and thoughtful analysis held such a use of peremptory challenges unconstitutional undoubtedly resulted from its- holding that Thompson would not be applied retroactively (79 AD2d, at p 112, n 22). Thompson was decided on February 2, 1981. The McCray jury was selected on April 24, 1980.

. Although only four Justices concurred in the part of the opinion from which the quoted words are taken, the three dissenting Justices who argued that the proof presented was sufficient to demonstrate a constitutional violation implicitly agreed with it.

. The contrary suggestions of the majority (at pp 548-549), more fully answered in the text of this dissent, below would be more convincing if supported by empirical evidence from California, Massachusetts or New Mexico, each of which, in reliance on respective State constitutional provisions, has held (People v Wheeler, 22 Cal 3d 258; Commonwealth v Soares, 377 Mass 461, cert den 444 US 881; State v Crespin, 94 NM 486) that the representative cross section requirement forbids the “potential affinity” peremptories which the majority now sanctions.

. Of course, if one assumes that neither blacks nor whites are necessarily partial, there can be no justification for peremptorily challenging either group as a class.

. Although in some circumstances remittal for a hearing may be proper (see People v Payton, 51 NY2d 169, 176-178; cf. People v Havelka, 45 NY2d 636), such a remittal would not be proper in the present case in view of the time elapsed and the fact that, apparently, the voir dire was not recorded (People v Thompson, 79 AD2d, at p 111, n 22, supra).