Wachtler, J.
On May 5, 1971, New York City detectives
assigned to the Special Investigating Unit of the Narcotics División obtained search warrants for four apartments in Manhattan. Each of the warrant applications was based on observations at the premises and information supplied by an undisclosed informant who had previously furnished information leading to three narcotics convictions. During the surveillances, made on two specific dates in late April or early May, “ drug sellers ” were seen entering and leaving the apartments. The informant, the affidavits state, “ was in the aforementioned apartment with [the named occjupant] présent and did see a quantity of narcotic drugs therein ” on a certain date. One of the warrants, obtained by Detective Cruz, relates to the defendant’s apartment and directs an “ immediate search of ground floor left front apartment in premises 72-74 East 119th Street * * * New York County, occupied by1 Vino ’ *, * * and of the person of ‘ Vino ’ * * * and any other person who may be found therein another, issued to Detective Boche, authorizes a search of “ apartment 24 * * * in premises 36 West 138th Street * * * New York County, occupied by Betty Lucas * * * and of the person of Betty Lucas * * * and of any other person who may be found therein
Two days after obtaining the warrants Detectives Boche and Cruz, accompanied by Patrolman Sheehan, entered the apartment house building located at 36 West 138th Street to execute the Lucas warrant. As they proceeded along the third floor hallway they noticed the defendant leaving the Lucas apartment. Sheehan approached the defendant, advised him that he had a search warrant and proceeded to search him. A single package of white powder was recovered which later proved to be heroin.[1] Based on the results of this search the. defendant was arrested and charged with criminal possession of a dangerous drug in the third degree.
A motion to suppress the evidence seized from the defendant outside the Lucas apartment was denied and the defendant pleaded guilty to the crime charged.
*499 On this appeal we are asked to consider whether the search was authorized by either the “ Vino ” or the Lucas warrant, or, if found to be beyond the scope of these warrants, it may be sustained as an incident to a lawful arrest.
The prosecutor’s first argument is that the ‘ ‘ Vino ’ ’ warrant authorizing, inter alla, a search “ of the person of ‘ Vino ’ ”, was a personal warrant that could be executed anywhere. The simple answer is that, by its very terms, it was not. If this is not evident from the face of the warrant — and we think it is — the application underlying and supporting the issuance of the warrant makes it unmistakably clear.
Reading the two together it is apparent that the search authority requested and granted was limited to the premises where the contraband was believed to be (cf. United States v. Baca, 480 F. 2d 199), and extended only to those individuals, including the occupant, who being found therein, might reasonably be expected to conceal the contraband on their persons (cf. People v. Smith, 21 N Y 2d 698). This authority to search the occupant under these circumstances is not a general warrant to search his person wherever he may be found. It follows that the search of the defendant made outside the Lucas apartment — over 19 blocks away — was not within the scope of this warrant.
The Lucas warrant which, as noted, contained nearly identical language was similarly directed to a designated place and only incidentally authorized the search of any person “ found therein ”. It is conceded that the officers did not encounter or search the defendant upon these premises. It could not be seriously argued that having observed the defendant leave the apartment a subsequent search at some remote place to which he might be followed would be authorized under this warrant. There is no reason to apply a different rule to a search conducted just beyond the threshold. One of the most fundamental and salutary characteristics of a search warrant is that “ The authority to search is limited to the place described in the warrant and does not include additional or different places ” (Keiningham v. United States, 287 F. 2d 126, 129). To put it another *500 way “ therein ” means therein and the authority to search stops at the threshold.[2]
The search then exceeded the clearly defined scope of both these warrants. It is true as the People urge that it may nevertheless be sustainable as an incident to a lawful arrest (see, e.g., People v. Malinsky, 15 N Y 2d 86) but this is a question which cannot be decided on the record now before us because the issue of probable cause independent of the warrants was not determined at the trial court hearing.[3] Since there are unresolved questions as to the admissibility of the evidence the indictment should not be dismissed, nor should the judgment be disturbed until these issues are determined.
Accordingly, the order of the Appellate Division should be modified by remitting the case to Supreme Court, New York County, for determination of the issues as to probable cause for the arrest and incidental search of defendant, and, as so modified, affirmed.

. A different problem would be presented had the defendant been within the apartment and fled when the officers arrived and announced their purpose. We simply hold that the mere existence of a warrant does not justify the search of any person seen casually leaving the premises prior to the execution of the warrant (see, also, People v. Smith, 21 N Y 2d 698).

. The finding of probable cause justifying the issuance of the “ Vino ” warrant is not dispositive of this issue for, as we noted in People v. Malinsky (15 N Y 2d 86, 91, n. 2) the People bear the initial burden of “ going forward in the first instance with evidence to show that probable cause existed both in obtaining a search warrant and in sustaining the legality of a search made, without a warrant, as incident to an arrest.” (Emphasis added.)