OPINION OF THE COURT
Wachtler, J.
The defendant has been convicted of murder at a trial in which the prosecutor introduced a shell casing found in the defendant’s apartment, when the police forcibly entered to arrest him without a warrant. On appeal the United States Supreme Court held that the police may not enter private premises without a warrant unless there are exigent circumstances and found unconstitutional certain New York statutes insofar as they would permit "routine” warrantless entry by arresting officers. On remand the defendant urges that the shell casing be suppressed, his conviction reversed and a new trial ordered. However the prosecutor, who successfully relied on the arrest statutes at the pretrial suppression hearing, now argues that there were exigent circumstances and urges that we either so find on the record as it stands, reopen the hearing for additional evidence on this issue, or hold the *173 exclusionary rule inapplicable when police conduct was authorized by statute.
On January 12, 1970 a man armed with a rifle and wearing a ski mask robbed a Manhattan gas station. During the robbery the gas station manager was shot and killed. On January 15 the police went to the defendant’s apartment. It is conceded that at this point, as a result of their investigation, the police had probable cause to believe the defendant was the man who had robbed and killed at the gas station three days earlier. They had not, however, obtained a warrant for his arrest. At the apartment the police could hear a radio playing behind the door and saw light beneath it. But when they knocked they were not admitted. They then called for technical assistance and when it arrived, one half hour later, they forceably entered the apartment. The police were unable to find the defendant in the apartment but they saw and seized a shell casing which had been lying in plain view on a stereo set.[1] The following day the defendant surrendered to the police. He was indicted for felony murder and intentional murder.
Prior to trial the defendant moved to suppress the shell casing. At a hearing on the motion the defendant brought out the fact that the police had not obtained a warrant to enter the premises. He also sought to show that the police had sufficient time to obtain a warrant and no excuse for having not done so. However, the District Attorney objected to this line of questioning noting that under the statutes then in effect (Code Crim Pro, §§ 177, 178) the police were authorized to enter a person’s home to arrest him without a warrant and that the statutes did not limit this authority to cases where there were exigent circumstances. The court agreed with the prosecutor and sustained his objections on this and later occasions when the defendant sought to introduce proof on this point. At the conclusion of the hearing the court refused to suppress the shell casing, holding that it had been observed in plain view while the police were lawfully on the premises *174 pursuant to the statutes. The court also found the statutes constitutional.
The People introduced the shell casing at trial and produced expert testimony that the shell had come from the murder weapon. The jury found the defendant guilty of murder.
The conviction was affirmed by the Appellate Division (55 AD2d 859) and this court (45 NY2d 300). However, as noted, on appeal to the United States Supreme Court it was held that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect’s home in order to make a routine felony arrest” (Payton v New York, 445 US 573, 576). With respect to exigent circumstances, it was noted that the Trial Judge “had no occasion *** to decide whether” the circumstances preceding the entry of the defendant’s apartment “would have justified the failure to obtain a warrant, because he concluded that the warrantless entry was adequately supported by the statute without regard to the circumstances” (ibid., at pp 577-578). And, although the Supreme Court later indicated that “it is arguable that the warrantless entry to effect Payton’s arrest might have been justified by exigent circumstances” it nevertheless declined to pass on the issue since “none of the New York courts relied on any such justification” (ibid., at p 583). In sum, the Supreme Court rejected the theory the People had relied upon at the pretrial suppression hearing; found the New York statutes unconstitutional to the extent they would permit the police to forceably enter private premises without a warrant to make routine felony arrests and, accordingly, reversed and remanded to this court “for further proceedings not inconsistent with this opinion” (ibid., at p 603).
The defendant urges that the only appropriate action at this stage is to suppress the shell casing, reverse the Appellate Division order affirming the conviction and remit the case for a new trial. In the companion case of People v Riddick (51 NY2d 764) we have summarily suppressed the evidence. In the case now before us, however, the District Attorney has not conceded, as the prosecutor did in Riddick, that there are no exigent circumstances. In addition, and more fundamentally, the District Attorney urges that in the instant case the exclusionary rule cannot be applied.
With respect to this latter point, it is the prosecutor’s position that the exclusionary rule, which was designed to *175 compel the police to follow lawful procedures, should not be applied when the police conduct was expressly authorized by statute. He urges that this is especially true when, as here, the statutes the police relied upon have been in existence for nearly a century, codified a widespread practice and were only found to be unconstitutional long after the police had acted.
In a narrow sense, it is true that the exclusionary rule was originally created to deter police unlawfulness by removing the incentive (United States v Calandra, 414 US 338, 347-348). In a broader sense, however, the exclusionary rule serves to insure that the State itself, and not just its police officers, respect the constitutional rights of the accused. Thus, for instance, evidence will be suppressed if it was seized by the police pursuant to a court order or warrant subsequently found to be defective (see, e.g., Whiteley v Warden, 401 US 560; Spinelli v United States, 393 US 410) or pursuant to an order expressly authorized by a statute later determined to be unconstitutional (see, e.g., Berger v New York, 388 US 41). In those cases, of course, the police simply carried out a court order, as they were bound to do, and the fault lay with other branches of the government. Nevertheless, the exclusionary rule was held applicable to deny the State the benefits of its violation of the defendant’s constitutional rights.
Moreover, if as the prosecutor urges, police activities indorsed by statute or widespread practice are immune from the exclusionary rule, the Supreme Court’s decision in this case, and other decisions in like cases, could not affect Pay-ton’s conviction or the prosecution in which the statute or practice was first challenged. They would only provide guidance for future cases. In a system of government which requires the courts generally to decide only concrete cases and controversies, and to avoid advisory or purely prospective opinions (see, e.g., Stovall v Denno, 388 US 293, 301) this would mean that statutes and widespread practices broadly affecting the rights of accused persons would, ironically, be beyond judicial review for all practical purposes. Thus it is not so much the nature of the exclusionary rule but rather the nature of judicial process and the need to actually resolve a live controversy which requires that the exclusionary sanction be applied in cases which change the law or hold invalid practices which had previously been widely believed to be constitutionally acceptable.
That consideration, of course, is not present when the court *176 is asked to decide whether a new rule of law announced in an earlier case should be applied to cases or incidents concluded before the law changed. It appears that when retroactivity is at issue, concerns similar to those expressed by the prosecutor may be considered important, or in some cases, controlling factors (United States v Peltier, 422 US 531). But they cannot affect the outcome of the "first case” to decide the substantive point (Stovall v Denno, 388 US 293, supra).[2]
We also note that the prosecutor apparently argued the inapplicability of the exclusionary rule when this case was before the Supreme Court. Although this point was not discussed in the Supreme Court’s opinion, we view its reversal as an implicit rejection of the argument that the exclusionary rule can have no application in this case.
The prosecutor’s second, and principal, contention is that there were exigent circumstances which relieved the police of the obligation to obtain a warrant before entering the defendant’s apartment. He argues that the existing record supports this contention. Alternatively he requests that the suppression hearing be reopened so that the People may submit additional evidence on this point. The defendant urges that the record as it stands does not show exigent circumstances and that the People should not be given a second chance to submit proof on this issue because "they, themselves were responsible for whatever deficiency may exist in the record”. The defendant also argues that for the courts of this State to now determine whether there were exigent circumstances would be "inconsistent with the mandate of the Supreme Court”.
The court has concluded that the exigency question cannot be resolved on the existing record in view of the District Attorney’s objections, sustained by the hearing court, to the defendant’s efforts to fully develop the circumstances preceding the entry of his apartment. However, the District Attorney should not be penalized for his initial success at the hearing to the extent of being precluded from introducing proof of exigency at a new hearing. The Supreme Court’s determination did not expressly or by implication foreclose inquiry on this point. On the contrary, the Supreme Court’s determination prohibiting the People from relying on statutes authorizing police entry of private premises for routine arrests *177 has now, and for the first time, made proof of exigency relevant and necessary to the People’s case. Nor does the law of this State prohibit the People from submitting proof to support this alternative theory at a new hearing.
The People, of course, are not entitled to a new hearing every time they lose a suppression issue on appeal. All that fairness requires is that they be given "one full opportunity” to prove the admissibility of the evidence sought to be suppressed (People v Havelka, 45 NY2d 636). In Havelka we noted (at p 643) that the People have not been given such an opportunity, and thus should be granted a new hearing if "an error of law is committed by the hearing court which directly causes the People to fail to offer potentially critical evidence”. For instance if the People fail to call an informant based on a hearing court’s determination that such testimony is unnecessary, the People will be entitled to a new hearing in the event the hearing court’s ruling is found to be erroneous on appeal (People v Malinsky, 15 NY2d 86). Similarly if the People successfully rely on a warrant to justify a search they will not be precluded from submitting proof on another theory, at a new hearing, if it is found that the hearing court erred in holding that the warrant authorized the search (People v Green, 33 NY2d 496; see, also, People v Whitehurst, 25 NY2d 389).
On the other hand, if the People had a full opportunity to present their case at the original hearing, and failed through their own neglect, they are not entitled to try again when the defect is discovered on appeal. Thus if the prosecutor claims that evidence is admissible on a particular theory and yet, through no fault of the court, fails to submit sufficient proof to support that theory, we will not order a new hearing (People v Havelka, 45 NY2d 636, supra).
In Payton’s case the hearing court held that if the police had probable cause to arrest the defendant they had authority to enter his premises without a warrant regardless of the circumstances. Obviously that holding made it unnecessary for the People to attempt to prove that there were exigent circumstances. Now that the ruling has been held to be erroneous there is no reason why the People should be denied an opportunity to submit proof of exigent circumstances when this alternative theory has become critical to their case.
The fact that the court’s erroneous ruling, precluding proof of these circumstances, was prompted by the District Attor-' *178 ney’s objections is not controlling (see, e.g., People v Malinsky, supra, at p 90). At the hearing, the People had a right to rely on the statutes — which had been routinely employed by law enforcement officers for nearly a century — and to object to evidence which was irrelevant under the theory relied upon. To hold that the People who had succeeded on one theory must nevertheless develop or defend alternative grounds on the merits whenever their primary point has been attacked would prolong pretrial suppression hearings beyond necessity in most cases, and in some no doubt, to the limits of ingenuity. Time-consuming pretrial practices which will accomplish nothing in most cases are a " 'procedural luxury’ ” which the courts cannot afford to adopt or encourage (see, e.g., People v Gruden, 42 NY2d 214, 217).
In sum the People should be given an opportunity to submit proof of exigent circumstances, if any, at a new hearing. They should not be precluded from submitting evidence on a critical point when it becomes necessary, simply because they failed to do so at a time when the court had erroneously held the evidence was not necessary and indeed irrelevant to their case.
Accordingly, the order of the Appellate Division should be modified and the matter remitted to Supreme Court, New York County, for a hearing in accordance with this opinion and for the entry of either an order granting defendant’s motion to suppress and ordering a new trial or an amended judgment reflecting the disposition made at the hearing.

. The police also found other items during a thorough search of the defendant’s apartment but the prosecutor conceded that they had been illegally seized and would not be introduced at trial. In addition one of those items, a receipt for a rifle, led to the man who had sold the defendant the gun used in the robbery. On the prior appeal his evidence was found to be admissible on the inevitable discovery theory (45 NY2d 300). The Supreme Court refused to consider the validity of that holding (see 439 US 1044). Its inquiry was limited solely to the seizure of the shell casing. Thus, on remand, we too are only concerned with the admissibility of the shell casing.

. We. of course, are not required to decide retroactivity in this case and express no view as to whether the decision in Payton v New York (445 US 573 ) should be given retroactive effect.