OPINION OF THE COURT
Bellacosa, J.
We affirm the drug possession conviction, tried and appealed separately from the drug sale conviction which was previously reversed, because the somewhat intricate procedural and legal issues involved in the possession prosecution do not offend constitutional, statutory or precedential principles.
A series of drug sales by the defendant to an undercover officer in Albany in September of 1983 led to an oral application for a search warrant, the grant of an "oral search warrant”, and the ultimate arrest of defendant Crandall in a pickup truck near Albany Airport after a flight to Albany. The ensuing indictment for one count of criminal sale of a controlled substance, third degree (Penal Law § 220.39 [1]), and one count of criminal possession of a controlled substance, *462 third degree (Penal Law § 220.16 [12]), was severed for trial and the conviction for the sale count was ultimately reversed by this court (67 NY2d 111). The possession count also resulted in a conviction and is now before us on a number of issues, the key one of which relates to whether the Appellate Division can order that a suppression hearing be reopened when it finds a defect in the initial determination of the suppression court.
The salient chronological context for the resolution of this central issue begins with a refusal to suppress the seized evidence on the ground that a lawful search warrant had issued upon the oral application pursuant to a new statutory authorization (CPL 690.35, 690.36; suppression denied May 17, 1984). Defendant was then convicted of criminal possession of a controlled substance in the third degree after a jury trial (June 7, 1984). On the first appeal of the possession conviction to the Appellate Division, there was a finding of fundamental noncompliance with the new warrant procedure requirements invalidating the warrant as a predicate for a lawful search, and a remittal for a new suppression hearing (People v Crandall, 108 AD2d 413 [3d Dept 1985]). On remittal, the suppression court allowed the People to present evidence establishing a nonwarrant, probable cause basis for the search of Crandall and his vehicle, and the seizure of a pouch containing more than one ounce of cocaine and a suitcase containing United States currency, pursuant to this court’s decision in People v Belton (55 NY2d 49) and, in dual orders, denied suppression again but on the new basis (Feb. 14, 1986). The Appellate Division, on its review of the appeal which had otherwise been held in abeyance, affirmed the judgment of conviction, without opinion, implicitly and necessarily upholding the denial of suppression of evidence (People v Crandall, 120 AD2d 994 [3d Dept 1986]).
A Judge of this court granted leave so we might review the correctness of the Appellate Division’s remittal, allowing the People a subsequent opportunity to establish the legitimacy of the search and seizure on grounds other than the appellate-dead warrant basis. It is key to note at the outset that the People had no previous incentive to advance alternative theories nor would it have made any legal or practical sense to advance theories supporting the legality of the search other than on the preferred warrant basis.
We hold that the courts below ruled correctly based upon *463 the unbroken thread of precedents governing this particular procedural channel of search and seizure law (People v Payton, 51 NY2d 169; People v Havelka, 45 NY2d 636; People v Green, 33 NY2d 496; People v Malinsky, 15 NY2d 86). Having so held, we also conclude that there is no basis to disturb the conclusion of the courts below that the probable cause basis for denying suppression of evidence in this case was sufficient. We have also examined defendant’s other assertions of error and find them to be meritless.
The seminal precedent on the key issue is People v Malinsky (supra). We recognized that the People should not be deprived of an opportunity to fully present all the available evidence merely because the hearing court made an incorrect ruling. Malinsky involved a search which the People sought to justify as incident to a lawful arrest. In upholding the search, the suppression court mistakenly ruled that the People did not have to provide the defense with the identity of a confidential informant or with the arresting officers’ unofficial notes. This court remitted the matter so that the People would have the opportunity to submit further evidence to establish that the arrest was based upon probable cause independent of the informant’s statements, or to show additional corroborating details, or reveal the informant’s identity. The remittal was authorized since this court "felt that the police may have been in possession of additional corroborating details, not testified to upon the hearings already held” (People v Malinsky, supra, at 95) and that these details were not initially introduced because the suppression court’s ruling made it unnecessary.
Consistent with Malinsky, we remitted in People v Green (33 NY2d 496, supra) to permit the People to introduce evidence on whether probable cause to arrest existed, supporting the subject search as incident to a lawful arrest. Evidence on the arrest issues was not initially developed at the pretrial suppression hearing because the court held that the search was proper pursuant to a search warrant. In holding that the search of Green was beyond the scope of the warrant, we implicitly recognized that the People, in reliance on the magistrate’s determination that a warrant should issue, had no incentive to present search-incident-to-arrest evidence as an alternative ground for sustaining the search. The factual and analytical pattern of Green squarely fits the instant case.
We were confronted with a situation different from the Malinsky-Green "emerging principle” in People v Havelka (45 *464 NY2d 636, 643, supra). In Havelka, the police had received a warning that a gun battle was going to occur. Police officers deployed to quell the situation stopped and frisked a number of individuals and found a gun on the defendant. At the ensuing suppression hearing, the People presented only the police officer who performed the search. No evidence was presented concerning the reliability of the warning or of the informant, nor was the informant called. The Appellate Division remitted the case for a further hearing because the suppression court initially lacked sufficient evidence to establish that the search and subsequent weapon seizure was legal. After the rehearing and affirmance, we noted that Malinsky and the "numerous subsequent cases” which have applied its procedure hinge on the idea that the People should be permitted to introduce additional relevant testimony at rehearings because, misled by a ruling of the suppression court, they may have refrained from offering other available evidence believing that their theory had been accepted and their burden had been satisfied. We summed up and confirmed our overview of precedents by observing that subsequent cases: "are consistent with the emerging principle implicit in Malinsky — that the People should not be deprived of one full opportunity to present evidence of the dispositive issues involved at the suppression hearing. If an error of law is committed by the hearing court which directly causes the People to fail to offer potentially critical evidence a rehearing should be ordered so that the evidence may be presented” (People v Havelka, supra, at 643).
Having articulated the view that the People should not be deprived of one full opportunity, the majority in Havelka concluded that the People should not, on the other hand, have a right to rehearing without limitation, and that there is no justification for providing a second chance to the People where they tried once and failed without the interposition of judicial error. Under the facts of Havelka, there was no erroneous ruling by the suppression court to lull the People into complacency or to otherwise interfere with their opportunity to advance evidence and, thus, the People had their one full opportunity at the initial hearing. Inasmuch as the evidence was insufficient despite the full opportunity to substantiate the propriety of the search and seizure, we ruled that the People should not be afforded a second opportunity to cure the defect.
In People v Payton (51 NY2d 169, supra), this court reaf *465 firmed the Malinsky-Green principle that "[a]ll that fairness requires is that they [the People] be given 'one full opportunity’ to prove the admissibility of the evidence sought to be suppressed” (People v Payton, supra, at 177). In Payton, the United States Supreme Court reversed on the ground that the New York statute permitting arrests in a suspect’s home without a warrant was invalid and remanded the case to this court. We then noted that because the arrest was made pursuant to a previously valid statute, the People had not offered any evidence that the warrantless arrest might be proper due to exigent circumstances. Citing Malinsky (15 NY2d 86, supra) and Green (33 NY2d 496, supra), we held that just as the People are entitled to a new hearing when the court makes an error of law which causes the People not to offer potentially critical evidence, or where the People rely upon the hearing court’s action in sustaining a warrant to justify a search and do not submit proof on another theory, so too are the People entitled to a new hearing if they rely upon the hearing court’s ruling based on a previously recognized statutory ground. The complementary principles emerging out of Malinsky-Green and out of Havelka were analytically harmonized and the former one was applied to the Payton situation.
These correlative principles in the entire line of cases remain intact today and appear to be well understood and fairly applied by the lower courts in the myriad of situations which daily confront them.
Another recent case requiring comment applies both principles to discrete problems in the one case. In People v Dodt (61 NY2d 408), the People, through no error of the hearing court, offered insufficient evidence to establish probable cause for defendant’s arrest. Failing to detect the insufficiency of the evidence, the suppression court ruled that an ensuing line up identification was the product of a valid arrest. Due to the suppression court’s erroneous ruling, the "defendant’s trial” motion seeking to bar the in-court identification was improperly denied. Since the incorrect trial ruling was based upon the suppression Judge’s error of law, the prosecution did not attempt to justify the in-court identification under the independent source doctrine. In analyzing the legal questions presented in Dodt, we found that the People should not be permitted a second hearing on the admissibility of the line up evidence with respect to the consent aspect since they had had one full opportunity to sustain the validity of that line up *466 identification. We noted that Havelka bars the second hearing in the interest of guarding against "the potential for abuse and injustice through the tailoring of testimony to fit the requirements established by an appellate court’s opinion” (People v Dodt, supra, at 418). In so ruling, however, and this is key to the distinction from the instant case, we did not foreclose the People from establishing an independent source for the in-court identification and, thus, consistent with Malinsky, we remitted Dodt for a new hearing with respect to the separate in-court identification based on the independent source theory.
Thus, Dodt fits compatibly within the holdings of the four principal cases, as does People v Bryant (37 NY2d 208). In Bryant, the suppression court found that there was insufficient evidence to arrest and suppressed the challenged evidence. The Appellate Division found the critical testimony at the suppression hearing equivocal and remitted the case. This court regarded the Appellate Division’s determination that the evidence was equivocal as, in effect, affirming the hearing court’s finding of insufficient evidence. Noting that "[n]o contention is made that the People had not had full opportunity to present evidence” (People v Bryant, supra, at 211), we reversed. In essence, Bryant was a precursor to Havelka’s articulation of the "one full opportunity rule” and is consistent with the precedents which have followed.
We affirm the instant case because the Malinsky-Green-Payton principle is applicable to facts developed here. In. the procedural context of this case, the suppression court initially upheld the validity of the search of Crandall’s vehicle and person and the ensuing seizures based upon the existence of an "oral search warrant”. There is no such thing. The new statute authorized oral applications which still must evolve into a written warrant. However, the invalidity of that warrant was not established until later upon appellate review. At the time of the first hearing, the People did not offer evidence to sustain an alternative basis for the search and seizure because the warrant was presumptively valid. As in Green and Payton, there was no incentive or necessity to do more. When, on appeal, the Appellate Division ultimately ruled on that basis that the "oral search warrant” was improper and that the hearing court erroneously ruled that the evidence seized was not subject to suppression, the case was correctly remitted to the hearing court so that the People could introduce evidence, if there was any, on the alternative basis that the *467 search and seizure were proper as being incident to a lawful arrest. Just as the suppression courts’ erroneous rulings in Malinsky (that the informant’s identity did not have to be revealed), Green (that the search warrant was appropriately executed) and Payton (that warrantless arrests in the defendant’s home were legal under a then valid statute) entitled the People to introduce additional evidence on why the seized evidence should not be suppressed, so too, did the magistrate’s erroneous decision in issuing the "oral search warrant” in this case permit the People to introduce alternative, additional evidence.
Our rulings in the Malinsky-Green-Payton line of cases, including today’s holding, can be analogized in terms of the appropriate corrective action to cases where, as a consequence of trial error by the prosecution or the court, a new trial is ordered. Correspondingly, as under the Havelka principle, when the evidence at trial is insufficient after the People have had a full opportunity to present their evidence, the appropriate corrective action is to dismiss the criminal charge. In short, the parallel between the corrective action of cases of true insufficiency of the evidence and those involving trial errors helps to demonstrate the correctness of the rationale and result we reach in this case.
In doing so, we also reiterate the caveat expressed in Havelka and Dodt that suppression courts should be alert to the potential for abuses through the tailoring or alteration of testimony to satisfy the deficiencies found by an appellate court. From their unique fact-finding perspective, they should not countenance law enforcement misconduct in this respect. The objective of our precedents is to ensure that the People get their one fair full opportunity to establish the admissibility of the seized evidence, not to allow evasion of the legitimate strictures of the Fourth Amendment’s protections by dishonest or unfair resuscitation of defective cases with the aid of appellate court hindsight (cf., People v Berrios, 28 NY2d 361, 368).
The important legal and policy goal of balancing the protections afforded the accused from unjust second efforts at establishing the admissibility of seized evidence, against the right of the People to have a full opportunity to present distinctly separate theories for the validation of a search and seizure, is protected by the complementary principles of our cases.
*468 Accordingly, the order of the Appellate Division upholding the drug possession conviction should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Titone and Hancock, Jr., concur; Judge Alexander taking no part.
Order affirmed.