OPINION OF THE COURT
Patrick J. McGrath, J.
By order of the Appellate Division, the above criminal case was remanded to the trial court for a hearing and determination of the defendant’s motion to suppress. After conducting a hearing the court makes the following findings of fact:
FINDINGS OF FACT
Officers McMahon and Teal, members of the Troy Police Department Drug Unit, conducted an investigation regarding drug activity from No. 3 Middleburgh Street, second floor apartment in the City of Troy, County of Rensselaer and State of New York. The officers had received several complaints about drug activity at the premises. During the surveillance many people were observed entering and exiting the building. They conducted approximately 10 days of surveillance at the premises. On January 7, 1992 a confidential informant stated to Officer McMahon that a black male, who was identified by name, was selling quantities of cocaine out of No. 3 Middle-burgh Street, second floor apartment in the City of Troy. Based upon that information, Officer McMahon accompanied the confidential informant to No. 3 Middleburgh Street and he was fitted with an electronic monitoring device. The confidential informant was searched and all of his personal property was taken from him and he was given a $20 bill to purchase drugs. The confidential informant was observed entering No. 3 Middleburgh Street and was observed exiting the building a couple minutes later and kept in sight until he met with Officers McMahon and Teal and turned over a small plastic baggy containing a white rock-like substance that field tested positive for cocaine. The confidential informant was researched and found to have only the small plastic baggy containing the white rock-like substance and the $20 bill was gone. While the confidential informant was inside No. 3 Middleburgh Street the following conversations were electron *278 ically monitored: "Gotta twenty”, "Yea”, "Thank you Terry” (the first name of the individual identified by the confidential informant), "No problem”. Based upon the above information, a search warrant was obtained from the Troy City Court Judge on January 8, 1992 to search the individual named by the confidential informant as well as the second floor apartment of No. 3 Middleburgh Street and "any other person therein or thereat to whom such property described above may have been transferred or delivered to also any other area the residents may have custody or control of including but not limited to the attic”. Based upon the officers’ experience it was common for people selling narcotics to hide them in areas outside the immediate premises or give the narcotics to other people within the premises.
Pursuant to the search warrant, the premises were searched on January 8, 1992, at approximately 8:30 p.m.
No. 3 Middleburgh Street consisted of a three-story house with three separate apartments on each floor. There is a common front door entryway for all three apartments. Once you enter the front door there is a common staircase to your left that leads to the second floor. The door to the first floor apartment is to the right and set back away from the staircase. At the top of the staircase is the second floor landing with the door to the second floor apartment being IV2 feet from the top step of the staircase. The second floor landing proceeds to the right to another staircase that leads to the third floor apartment.
The Troy Police Department Emergency Response Team was the first to enter the building. When they entered Sergeant Teal was stationed outside the building and observed windows being broken out on the north and east sides of the building and bags being thrown out. Sergeant Sprague was the first man in line entering the building. As Sergeant Sprague entered, the building was dark and he illuminated the area of the stairs with a flare light and began to go up the stairs to the second floor. As Sergeant Sprague went up the stairs he noticed the defendant standing on the stairs two to three steps from the second floor landing near the door to the second floor apartment. The door to the second floor apartment was closed at the time. Sergeant Sprague ordered the defendant to lay down on the stairs and he complied. The defendant was going down the stairs. Sergeant Sprague passed by the defendant and entered the second floor apartment by forcibly opening the door. The defendant was six feet away *279 from the second floor door when Sergeant Sprague first observed him. There were no other individuals in or about the stairways. The defendant did not say anything to Sergeant Sprague or any of the other members of the response team.
Another member of the Emergency Response Team, Officer Colaneri, secured the defendant while he lay on the stairs by handcuffing him. The defendant was brought inside the second floor apartment front room. The defendant was placed on the floor and patted down for weapons which included squeezing a fanny pack he had tied around his waist. Officer Colaneri was the last member of the Emergency Response Team to enter the premises. Officer Colaneri was the ninth member of the Emergency Response Team and eight other people entered before him.
Two minutes after the Emergency Response Team had secured the premises Captain George Maring, captain of the Drug Unit of the Troy Police Department, entered the building. Captain Maring ordered Officer Colaneri to bring the defendant into the second floor apartment. There were four or five other individuals inside the apartment who were secured by the police. Captain Maring directed two police officers to stand the defendant up. Captain Maring unzipped the fanny pack around the defendant’s waist and looked in it. He saw a number of small baggies with what appeared to be crack cocaine. He conducted a field test on one of the baggies which gave a positive reading for cocaine. The defendant was then brought to the police station and charged with the present crime.
CONCLUSIONS OF LAW
The defendant first alleges that the search warrant was defective based upon failure to show the reliability of the confidential informant and the basis of the confidential informant’s knowledge. (People v Martinez, 80 NY2d 549; People v Griminger, 71 NY2d 635.) The court finds that there was sufficient factual demonstration to the issuing Judge concerning the reliability and basis for the information provided by the confidential informant. Unlike the fact pattern set forth in People v Martinez (supra), here, the confidential informant made a controlled buy at the premises. The confidential informant was searched, his property was inventoried, he was kept in sight continuously from entry and exit of the building, he was re-searched and his property re-inventoried. Addition *280 ally, the drug transaction was electronically monitored and the confidential informant referred to the seller by name which matched the name that had been provided to the police. Accordingly, the search warrant application demonstrated to the issuing Judge a reasonable showing that the informant was reliable and had a basis for the information supplied. Also, where a search warrant has been secured, the bona fides of the police will be presumed and the subsequent search upheld in a marginal or doubtful case. (People v Hanlon, 36 NY2d 549, 558.)
The defendant’s second basis for challenge is that the police exceeded the scope of the search warrant when they searched the defendant. CPL 690.15 (2) specifically provides that a search warrant which directs a search of a designated place may also direct a search of any person present thereat or therein. This language has been held to be constitutionally permissible in conformance with the Fourth Amendment of the US Constitution and NY Constitution, article I, § 12. (People v Nieves, 36 NY2d 396.) Particularity is required in order that the executing officer can reasonably ascertain and identify the persons or places authorized to be searched and the things authorized to be seized. To protect the right of privacy from arbitrary police intrusion, the "core” of the Fourth Amendment (Wolf v Colorado, 338 US 25, 27), nothing should be left to the discretion of the searcher in executing the warrant. (Marron v United States, 275 US 192, 196; People v Nieves, supra.)
Defendant’s reliance upon People v Green (33 NY2d 496) is misplaced since that case dealt with a different fact pattern. In the Green case, the Court was dealing with two separate search warrants. Neither of the warrants contained the language "thereat or therein” as contained in the present warrant. One of the warrants related to the defendant’s apartment and directed an immediate search of the premises "occupied by 'Vino’ * * * and of the person of 'Vino’ * * * and any other person who may be found therein” (at 498). The other warrant authorized a search of an apartment at another address, 19 blocks from the defendant’s apartment, and authorized the search of a designated person " 'and of any other person who may be found therein’ ” (supra). When the police attempted to execute the second search warrant the defendant was seen leaving the premises and stopped and searched outside the premises. In suppressing evidence as a result of the search, the court stressed the fact that the warrant only *281 authorized the search of persons found therein and did not provide for the search of any persons thereat. Also, the court held that the search warrant for the defendant’s premises and his person was in the nature of a locus designation and did not justify the search of the defendant’s person away from the designated premises. In making its decision the Court indicated "to put it another way 'therein’ means therein and the authority to search stops at the threshold” (at 499-500).
The Court of Appeals has taken a rather narrow interpretation of the Green case (supra). The same year the Green case was decided, the Court of Appeals in People v Easterbrook (35 NY2d 913) refused to apply the Green rationale and distinguished the case on the facts. In Easterbrook, a search warrant had been issued to search a designated apartment and " 'any other person who may be found to have such property in his possession or under his control or to whom such property may have been delivered’ ” (at 914). In upholding the search of an individual seen leaving the apartment, the Court indicated that the Green case is distinguishable since the warrant involved in that case limited the search area to a specified apartment and persons found therein. The Court recognized the defendant to be within the area and class of individuals authorized to be searched since the language of the warrant allowed it to extend beyond the threshold of the premises. Other cases have recognized the authority to search beyond the threshold especially with warrants dealing with the search for controlled substances in areas of alleged drug activity (see, People v LaFontaine, 190 AD2d 609, lv denied 82 NY2d 721 [where the Court held the search of a mailbox was within the scope of the warrant since it was appurtenant to the specified premises]). From the above cases it becomes clear that the terms therein and thereat are not synonymous and have different legal meanings.
Turning next to the defendant’s second basis for challenge, it must be decided whether the police conduct was reasonable in including the defendant within the area and class of individuals authorized to be searched pursuant to the warrant. Reasonableness should not be determined in a judicial vacuum. The standard of reasonableness must be considered within the legal-social context in which it is measured. The police are faced with a rampant drug problem marked by violence and addiction that has attacked the body of our neighborhoods like a spreading cancer.
Under the facts of the present case, the court rules that *282 the police conduct was reasonable and the defendant was within the area and class of individuals authorized to be searched pursuant to the warrant. The premises to be searched were alleged to be the center of high-drug activity, 10 days of police surveillance confirmed numerous individuals entering and exiting the building, the defendant was in the immediate area of the threshold of the premises, the defendant never gave the police any information which would lead them to believe he was not connected with the premises to be searched, and even though the defendant was not seen leaving the premises it was reasonable for the police to believe so since he was coming down the stairs in the immediate area of the threshold. Accordingly, the defendant was a person thereat to whom drugs could have been transferred and the motion to suppress is denied.