SECOND DIVISION

AUGUST 29, 2000

No. 1-99-1644

THE PEOPLE OF THE STATE OF ) Appeal from the

ILLINOIS, ) Circuit Court 

) of Cook County 

Plaintiff-Appellee )

)

v. ) No. 95 CR 11316

)

MANUEL GONZALEZ, ) The Honorable

) James P. Flannery, Jr.,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE COUSINS delivered the opinion of the 

court:

Police officers procured a search warrant for the defendant and his apartment based on an informant's tip.  An officer was watching the apartment while awaiting the arrival of other police officers in order to execute the search warrant. Before other officers arrived, he observed the defendant exit the apartment and drive away in an Oldsmobile.  The officer followed and apprised other officers of the situation. The defendant parked the Oldsmobile on the street, entered an alley garage and exited after about 20 minutes driving a Chevrolet with license plate number JMJ-792.  The defendant was then stopped by the police. Cocaine was found on the defendant's person and he was placed under arrest.  His car was then searched and drugs were found in a compartment behind one of the seats.  The police took him back to his apartment where drugs and related paraphernalia were found.  The defendant then signed a consent form for the police to search the garage.  The police found large amounts of cocaine and marijuana in the garage.

The defendant was charged by indictment with four counts of possession of cocaine with intent to deliver and four counts of possession of cannabis with intent to deliver.  The defendant moved to quash arrest and suppress evidence.  The motion was denied by trial court.  A jury found the defendant guilty.  He was sentenced to concurrent sentences of 15 years in prison for possession of cocaine with intent to deliver and six years in prison for possession of cannabis with intent to deliver.  The court also imposed a fine of $154,835.57 as the street value of the drugs.

The defendant now appeals, arguing that the trial court should have granted the motion to suppress because: (1) the search of his person was not authorized by the warrant except at his apartment; and (2) the police had no basis to search his car.  Further, the defendant argues that his cannabis conviction must be vacated because the judge gave the jury a figure that was not in evidence as to the amount of drugs seized.  The defendant also contends that the fine must be vacated because there was not a basis in the record for the court to assign a street value to the drugs.  The State argues that the fine must be increased by $10,000 because a prosecutor inadvertently gave the trial judge the wrong figure for the street value.

BACKGROUND

Chicago police officer Earnest Cain testified that on February 17, 1995, he was watching an apartment on North Campbell as he waited for other police officers to arrive in order to execute a search warrant.  Three days earlier an informant had told Officer Cain that the defendant, Manuel Gonzalez, had bagged and sold cocaine to him at the apartment.  The informant also related that he had helped Gonzalez to conceal some cocaine in a white Chevrolet with license plate number JMJ-792.  This informant had provided information to the police three times in the previous year. The tip had led to the recovery of narcotics on each occasion.  Cain put this information in an affidavit and applied for a search warrant.  A judge issued the warrant on a preprinted form.  Gonzalez' name was typed in the blank labeled "person." The address of the apartment was typed in the blank labeled "premises."  In the blank labeled "instruments articles and things" was typed "a quantity of cocaine and related narcotic paraphernalia, any document or items that could be used as proof of residency and any United States currency."

Before the other officers arrived to perform the search of the apartment, Cain saw Gonzalez exit the building and drive away in a brown Oldsmobile.  Cain followed Gonzalez and apprised the officers en route of the situation.  Gonzalez parked the Oldsmobile on the street at Diversey and Richmond.  He then entered an alley garage using an automatic garage door opener and closed the door after him.  About 20 minutes later, Gonzalez exited the garage driving a white Chevrolet with license plate number JMJ-792.  Cain stopped Gonzalez with the assistance of the other officers about six blocks away from the garage.

Cain asked the defendant his name.  The defendant responded that his name was Gonzalez.  Cain then showed Gonzalez the search warrant and proceeded to search Gonzalez' person.  The search produced a plastic bag with a white powder that looked like cocaine.  Cain placed Gonzalez under arrest.  The officers moved the car into a nearby alley.  Cain searched the passenger compartment of the Chevrolet while Gonzalez was sitting, handcuffed, in the back of a police cruiser.

Cain testified that drugs are frequently transported in secret compartments or "traps" in cars and that these traps are often accessed using an electronic switch.  While searching the car, Cain saw two indentations behind the passenger side sun visor that, Cain said, looked like trap switches.  When he pressed them, however, nothing happened.  He then started the car and pressed them again, again to no avail.  After that, Cain started pressing all the buttons on the dashboard.  When he pressed the rear defrost button, Cain said, one of the rear seats fell forward of its own accord, revealing a large quantity of cocaine and marijuana.

The officers then took Gonzalez and the Chevrolet to the apartment at North Campbell.  When they knocked at the door, Lucy Sanchez, Gonzalez' live-in girlfriend, answered but did not open the door.  One of the officers suggested breaking the door down, but Gonzalez opened the door with a key.  Once inside, the officers found a small amount of cocaine and marijuana.  They also found a gram scale, a spoon with cocaine residue on it, plastic freezer bags, and a letter sent to Gonzalez at that address.

When confronted with this evidence, Gonzalez confessed that he had been bagging and delivering drugs for a man named "Roberto."  He signed a consent form for a search of the garage on Diversey and Richmond.  Officers then went to the garage and opened it with the garage door opener that Gonzalez had used.  Inside the garage the officers found 20 pounds of marijuana in 20 bags and over a kilogram of cocaine in two bags, along with a scale and packaging materials.  In accordance with police department policy, the police retained 10 of the bags of marijuana for evidence. The other 10 were destroyed in order to save space.  

Chicago police officer Richard Rowan also testified, largely corroborating Cain's testimony.

Gonzalez testified that the apartment belonged to his girlfriend and that he left the apartment on February 17, 1995, in order to go to a job interview.  Although he was driving an Oldsmobile when he left, he had a newer Chevrolet that was in better condition parked in a garage in which he had recently rented space from a friend of his brother-in-law. Gonzalez said that the first time he had been in the garage was when he put his car inside the night before.  He decided to drive the Chevrolet to the interview since he thought it would make a better impression.  He stopped briefly in the garage in order to check his oil.  

Gonzalez testified that the police stopped him and searched him without showing him a warrant.  He said that the police did not find anything on him.  He sat in the back of a police car for an hour before being taken to the North Campbell apartment.  When they knocked, Sanchez answered the door but would not let them in because she was not fully dressed.  Sanchez opened the door, however, when the police began to kick it.  Gonzalez testified that he signed the consent form not knowing what it said because the police threatened to arrest Sanchez and take away her children.  He denied that he confessed to working for a man named Roberto.  Gonzalez said that he had used the rear defroster in the Chevrolet before and that it operated normally.  He said that he lived on Moody Avenue but received mail at the North Campbell address because he had been having trouble with the mail delivery at his primary residence.  Gonzalez testified that he did not know that there were any drugs in the Chevrolet or in the garage.

Arsenio Gutierrez testified that he owned the garage and that he rented it to Roberto for $125 per month.  He said that he gave the only opener to Roberto.  Gutierrez said that he did not know Gonzalez and had never seen him.  He admitted, however, that he did not normally go near or check inside the garage.

Lucy Sanchez testified Gonzalez was not on the lease for the North Campbell apartment and that he would only stay there about once per month.  She said she had known Gonzalez since 1983 and had three children with him.  Sanchez testified that she let the police in when they knocked.  She also said that Gonzalez signed the consent form in order to keep the police from arresting her and taking away her children.

At the motion to quash arrest, the defense argued that the warrant only gave the police the authority to search Gonzalez at the North Campbell apartment, not on a public thoroughfare.  The trial judge denied the motion, stating that he would be willing to reconsider his ruling if the defense could show him case law interpreting search warrants as the defendant urged.

At the close of evidence on the motion to suppress, the State filed a motion for a directed finding, which the trial court granted.  The court reasoned that the search of the car was constitutional as a search incident to arrest.  At the close of the trial, as the jurors were deliberating, they sent a note to the judge asking how much cocaine and marijuana was found in the Chevrolet.  Defense counsel suggested that the number be given to the jury, while the State recommended that the jury be told to rely on its notes and memories.  Both parties agreed that the information was in evidence.  The trial judge sent an answer to the jury, using a figure provided by the defense from a police lab report, over the State's objection.  As it happens, however, the amount of marijuana had not been put in evidence.

The jury convicted Gonzalez, and the judge sentenced him to concurrent sentences of a minimum of 15 years in prison for possession of more than 900 grams of cocaine with intent to deliver and six years in prison for possession of more than 500 grams of cannabis with intent to deliver.  The judge also imposed a fine of $154,835.57, as the street value of the drugs, pursuant to statute.  730 ILCS 5/5-9-1.1(a) (West 1996).  The trial judge based this dollar amount on the arrest report.

Gonzalez appeals, arguing that: (1) the trial court erred in denying the motion to quash arrest and suppress evidence since the warrant only authorized the search of Gonzalez at the North Campbell apartment; (2) the trial court erred in denying the motion to quash arrest and suppress evidence since the search of the car was not a valid search incident to arrest; (3) the conviction for possession of more than 500 grams of cannabis with intent to deliver should be reversed since the conviction was based on a figure not in evidence for the weight of the drug; and (4) the fine must be vacated because there was insufficient evidence at the sentencing hearing to support the figure given as the street value of the drugs.  For its part, the State argues that we should increase the fine because a prosecutor accidently read to the judge an amount for the value of the drugs that was lower than was recorded on the police report.

ANALYSIS

I

In examining the motions to quash arrest and suppress evidence, we review the factual findings and credibility determinations of the trial court for manifest error.  However, we apply a 
de
 
novo
 standard to the legal determination of whether suppression of the evidence is warranted under those facts.  
People v. Mabry
, 304 Ill. App. 3d 61, 64, 710 N.E.2d 454, 456 (1999); 
People v. Gonzalez
, 184 Ill. 2d 402, 411-12, 704 N.E.2d 375, 380 (1998).  In our view, it was not clear error for the trial court to find the State's witnesses to be credible.  We therefore analyze the constitutionality of the searches 
de
 
novo
 under the State's version of the facts.

Gonzalez first argues that the court erred in denying the motion to quash arrest because the search of his person was not authorized by the warrant.  Initially we note that the waiver rule is applicable to this issue since the defendant did not include it in a posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129-30 (1988). While the defendant did not properly raise the issue, the waiver rule is a limitation on the parties and not the courts. 
People v. Hamilton
, 179 Ill. 2d 319, 323, 688 N.E.2d 1166, 1169 (1997).  In this case, we choose to consider the merits of this issue.

A valid search warrant must state with particularity the place to be searched and the persons or things to be seized.  
People v. McPhee
, 256 Ill. App. 3d 102, 108-09, 628 N.E.2d 523, 528 (1993); U.S. Const. amends. IV, XIV; Ill. Const. 1970, art. I, §6.  In this case, the search warrant had Gonzalez' name and the address of the North Campbell apartment.  According to Gonzalez, this warrant only authorized the police to search him when he was at the North Campbell apartment.  As support, Gonzalez points to cases from New York and Massachusetts.

People v. Green
, 33 N.Y.2d 496, 310 N.E.2d 533, 354 N.Y.S.2d 933 (1974), is cited by Gonzalez.  In 
Green
,  a search warrant was issued based on an informant's report that he had seen the defendant in an apartment where drugs were located.  The warrant provided for the search of the apartment, the person of the defendant "and any other person who may be found therein." 
Green
, 33 N.Y.2d at 498, 310 N.E.2d at 534, 354 N.Y.S.2d at 934.  The police searched the defendant 19 blocks from the apartment and found heroin.  The New York Court of Appeals held that the defendant's motion to suppress the heroin was improperly denied.  When the warrant was read in light of the information contained in the application, it was clear that the thrust of the warrant was for the apartment and only to the defendant insofar as he was "found therein."  
Green
, 33 N.Y.2d at 499, 310 N.E.2d at 534, 354 N.Y.S.2d at 935.

A later New York Court of Appeals case, however, held that a search of a person just outside the address listed on the warrant was justified.  
People v. Sanin
, 60 N.Y.2d 575, 454 N.E.2d 119, 467 N.Y.S.2d 38 (1983).  The 
Sanin
 court distinguished 
Green
:

"In 
Green
, the focus of the warrant application was on the presence of drugs in an apartment; the tie to defendant was only his occupancy of the apartment and thus of possible constructive possession of drugs and no other evidence was offered of drug activity on his part.  Here the evidence was that defendant had sold drugs; the apartment was identified only as the locus of the sales. The activities of defendant being the predicate for issuance of the warrant, the warrant should be interpreted as authorizing a personal search of defendant at least as he approached the apartment." 
Sanin
, 60 N.Y.2d at 576-77, 454 N.E.2d at 120, 467 N.Y.S.2d at 39.

Similarly, in the case at bar, the activities of Gonzalez, rather than his presence at the North Campbell apartment, were the basis for the warrant. In 
People v. Velez
, 204 Ill. App. 3d 318, 562 N.E.2d 247 (1990), on facts similar to 
Sanin
, the court upheld a search of a person outside his apartment based on a search warrant authorizing the search of the person and the apartment.

In 
People v. Kerrigan
, 49 A.D.2d 857, 374 N.Y.S.2d 22 (1975), a search warrant had been issued for a florist shop that purportedly was the center of a gambling operation, as well as for a man who had been seen frequently at the shop.  However, when the warrant issued, the man had not been to the shop for six weeks.  The police searched the shop and found no incriminating evidence.  Then they searched the man a quarter mile from the shop and found gambling records on his person.  He was convicted based on this evidence.  The appeals court reversed on the grounds that the defendant's motion to suppress should have been granted. 
Kerrigan
, 49 A.D.2d at 858, 374 N.Y.S.2d at 23-24.  

The appeals court examined the warrant and decided that it was not a "personal" warrant authorizing the search of the defendant wherever he might be found. 
Kerrigan
, 49 A.D.2d at 858, 374 N.Y.S.2d at 23. The court found that the "thrust" of the warrant was for the florist shop. 
Kerrigan
, 49 A.D.2d at 858, 374 N.Y.S.2d at 24. However, the court did not hold that the warrant was not "personal" because such a warrant would be 
per
 
se
 invalid.  The court based its ruling on the interpretation of the particular warrant, considering the language therein as well as the evidence on which the warrant was premised.  The warrant itself did not contain language indicating that it was intended to be personal in nature. 
Kerrigan
, 49 A.D.2d at 858, 374 N.Y.S.2d at 23. Furthermore, aside from a vague phone conversation, the only evidence connecting the defendant to gambling was his association with the florist shop.  Since the defendant was only incidently connected to the gambling through his visits to the shop, the court concluded that the magistrate had intended the search warrant to be directed toward "the shop as a center of gambling operations, and to defendant only had he been found therein." 
Kerrigan
, 49 A.D.2d at 858, 374 N.Y.S.2d at 24.

The 
Green
 and 
Kerrigan
 cases are inapposite to the instant case. In the instant case, there was evidence connecting Gonzalez to drug dealing apart from his having been seen sometime previously in an apartment suspected of containing drugs
.  A reliable informant said that Gonzalez had sold him narcotics and that he had helped Gonzalez put narcotics in the Chevrolet.  Based on the warrant's description of the place to be searched and also naming Gonzalez and things to be seized, it is our view that the search warrant in the instant case contained language indicating that, regarding Gonzalez, it was intended to be personal in nature.

Gonzalez also cites 
Commonwealth v. Santiago
, 410 Mass. 737, 575 N.E.2d 350 (1991). In 
Santiago
, the Supreme Judicial Court of Massachusetts noted, when interpreting a search warrant for a person and a residence, that it had never construed such a warrant to authorize the search of a suspect wherever he or she might be found.  "[A]nd," the court added, "we need not do so in the case at bar." 
Santiago
, 410 Mass. at 742, 575 N.E.2d at 353.  The language in 
Santiago
 cited by the defendant is 
dictum
.  Also, 
Santiago
 is not controlling.

In our view, the trial court properly interpreted the thrust of the warrant as being personal to Gonzalez. Accordingly, we hold that the trial court did not err in denying the motion to quash.

II

Gonzalez next contends that the evidence seized from the Chevrolet should have been suppressed because the search of the car was unconstitutional.  The trial court upheld the search as a search of the passenger compartment of a car incident to arrest.  See 
New York v. Belton
, 453 U.S. 454, 460-61, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864 (1981).

Although the rationale for allowing a search of the passenger compartment and containers therein is that the arrestee might try to grab a weapon or destroy evidence, the Court in 
Belton
 purposefully set out a bright-line rule that did not depend on a case-by-case assessment of whether the area searched was accessible to the arrestee.  
Belton
, 453 U.S. at 459, 69 L. Ed. 2d at 774, 101 S. Ct. at 2863. Thus, in the case 
sub
 
judice
,  a search of the entire passenger compartment was justified despite the fact that Gonzalez was handcuffed in a police cruiser.  A 
Belton
 search remains valid even if the arrestee no longer has effective access to the vehicle at the time of the search.  
People v. Bailey
, 159 Ill. 2d 498, 504, 639 N.E.2d 1278, 1282 (1994).

Gonzalez acknowledges that a search incident to an arrest can be justified, but maintains that a search incident to an arrest does not extend to the dismantling portions of the car to find evidence.  Gonzalez cites 
United States v. Patterson
, 65 F.3d 68 (7th Cir. 1995), 
cert.
 
denied
, 516 U.S. 1061, 133 L. Ed. 2d 689, 116 S. Ct. 740 (1996).  The complete statement by the 
Patterson
 court 
relating to dismantling portions of the vehicle during warrantless searches is unhelpful to the defendant in the instant case:  "[A]lthough Trooper Brown was permitted to search the passenger compartment of the vehicle without a warrant, the exemption does not extend to dismantling portions of the vehicle, including the tailgate's interior cover.  In order to take apart the tailgate of Patterson's GMC Jimmy, the officers needed to have probable cause to believe that drugs were inside the vehicle." 
Patterson
, 65 F.3d at 71. Gonzalez argues that the police report shows that the police took his car apart, because "rear seat cushion pulled" is written in the report.  However, Cain's testimony was that the back seat fell forward of its own accord when he pushed the rear defrost button.  The trial court determined that Cain's testimony was credible.

Moreover, the court in 
Patterson
 held that probable cause existed to search behind a tailgate. 
Patterson
, 65 F.3d at 71. Similarly, looking at the totality of the circumstances in the instant case, we believe that probable cause existed to validate the search.  See 
United States v. Infante-Ruiz
, 13 F.3d 498, 502 (1
st
 Cir. 1994).  In the instant case, a reliable informant had told Cain that he had helped Gonzalez conceal narcotics in the rear seating area of that particular car.  Cain had already found drugs on Gonzalez' person.  Cain testified that he knew from his experience that drugs in automobiles are often concealed in traps activated by electronic switches.  A search incident to Gonzalez' arrest revealed two indentations that looked like switches.  In our view, Cain had probable cause to believe that contraband was concealed in the car and in seeking to activate a trap switch.  Accordingly, the trial court did not err in denying the motion to suppress.

III

Gonzalez next argues that his conviction for possession of more than 500 grams of cannabis with intent to distribute must be reversed because the jury based its verdict on a figure not in evidence for the weight of the marijuana seized.  There was marijuana far in excess of 500 grams in the garage.  Gonzalez contends, however, that the jury might not have concluded that this contraband was his and have convicted him based only on the marijuana in the car.  

The defendant has waived this issue because the issue was not included in Gonzalez' posttrial motion.  Moreover, not only did the defense fail to object to the judge's informing the jury of the purported weight, the defense supplied the figure and urged the judge to pass it on to the jury over the prosecution's objection.

IV

Gonzalez next contends that the fine that the trial court imposed must be vacated because it was based on insufficient evidence.  The State, for its part, contends that the fine must be revised upward because a prosecutor inadvertently misstated the figure that was to be the basis of the fine. According to statute, the trial court was required to impose a fine of at least the street value of the drugs seized. 730 ILCS 5/5-9-1.1 (West 1996).

"'Street value' shall be determined by the court on the basis of testimony of law enforcement personnel and the defendant as to the amount seized and such testimony as may be required by the court as to the current street value * * *." 730 ILCS 5/5-9-1.1 (West 1996). 

Once again, the waiver rule is applicable regarding this issue since Gonzalez neither made an objection at the sentencing hearing nor included the issue in a motion to reconsider sentence. 
Enoch
, 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124, 1129-

30. However, Gonzalez asks us to address the issue as plain error.  
People v. Simpson
, 272 Ill. App. 3d 63, 650 N.E.2d 265 (1995), is instructive.  In 
Simpson
, the trial court had based a street value fine on the prosecutor's unsupported assertion that cocaine sold for $100 per gram.  The reviewing court held that this was plain error, since there was no evidentiary basis for the fine. 
Simpson
, 272 Ill. App. 3d at 66, 650 N.E.2d at 267. Also, in 
People v. Otero
, 263 Ill. App. 3d 282, 284, 635 N.E.2d 1073, 1075 (1994), the trial court had based its street value fine on an erroneous statement by the prosecutor that trial testimony established that the street value of the drugs was $200.  The reviewing court also found this to be plain error.  In our view, the plain error exception applies to the instant case.

In the instant case, the prosecutor offered a figure from the arrest report.  The issue is whether this is sufficient evidence under the statute to determine the street value of the drugs.  As a general matter, the rules of evidence governing the guilt or innocence phase of a trial do not apply at sentencing hearings.  
People v. Williams
, 149 Ill. 2d 467, 490, 599 N.E.2d 913, 924 (1992).  Evidence must only be relevant and reliable to be admissible at a sentencing hearing. 
Williams
, 149 Ill. 2d at 490, 599 N.E.2d at 924. Documents generated by law enforcement personnel are often considered relevant and reliable although they would normally constitute hearsay. 
Williams
, 149 Ill. 2d at 490-91, 599 N.E.2d at 924. 

It is our view that the statute in question sets a somewhat higher standard than that normally operative in a sentencing hearing.  By its own terms the statute requires that the court base its determination of the amount of narcotics involved on "testimony" from law enforcement officers and the defendant. 730 ILCS 5/5-9-1.1 (West 1996).  Regarding the current street price for the type of drugs at issue, the statute mandates that the court base its determination on "such testimony as may be required by the court." 730 ILCS 5/5-9-1.1 (West 1996). 

People v. Dale
, 137 Ill. App. 3d 101, 484 N.E.2d 459 (1985), is an instructive case.  In 
Dale
, the defendant challenged the constitutionality of the street value fine provision on the grounds that it was overly vague.  The court held that the provision clearly notified any potential offender of how the fine would be determined. 
Dale
, 137 Ill. App. 3d at 106-07, 484 N.E.2d at 463-64.

"The court in 
Dale
 recognized that the determination of street value would be based on testimony of law enforcement personnel as to the current price of the drug based on the experiences of the officer on the street, with the defendant having the opportunity to challenge that testimony through cross-examination and introduction of his own testimony." 
People v. Lusietto
, 131 Ill. 2d 51, 56, 544 N.E.2d 785, 787 (1989), citing  
Dale
, 137 Ill. App. 3d at 107, 484 N.E.2d at 463-64.

In light of 
Dale
, we believe that the State should have presented testimony concerning the going price of cocaine and cannabis and should have given the defendant the opportunity to cross-examine any witnesses.  The arrest report standing alone does not establish who made the estimate of the street value and how the calculation was performed.  It may be that testimonial substitutes such as depositions or affidavits would also suffice.  The 
Otero
 court suggested that a stipulation by the parties would be acceptable.  
Otero
, 263 Ill. App. 3d at 287, 635 N.E.2d at 1076. But an arrest report introduced without any foundation is not sufficient and we so hold. We further hold that the failure to comply with statutory mandate in the instant case amounts to plain error.   

The State takes issue with the fine for a different reason, arguing that the fine is void because, contrary to statute, the fine was set at an amount lower than the street value of the narcotics.  
People v. Arna
, 168 Ill. 2d 107, 113, 658 N.E.2d 445, 448 (1995). It appears from the transcript of the sentencing hearing that a prosecutor inadvertently misread the figure recorded on the arrest report as the street value of the cannabis.  The dollar value given to the judge was $10,000 lower than the value that was written on the arrest report, which the prosecutor had correctly read off a few minutes earlier.  In our view, the misreading of the arrest report by the prosecutor serves to underscore the need for the requirement that the judge should hear evidence as to the street value of the narcotics. See 
People v. Tyson
, 221 Ill. App. 3d 256, 259, 581 N.E.2d 694, 696 (1991); 
Simpson
, 272 Ill. App. 3d at 66, 650 N.E.2d at 267; 
Otero
, 263 Ill. App. 3d at 287, 635 N.E.2d at 1076.

Gonzalez argues, and the State concedes, that he is entitled to a $5 credit against his fine for each day of incarceration prior to sentencing. 725 ILCS 5/110-14 (West 1996); 
Otero
, 263 Ill. App. 3d at 287, 635 N.E.2d at 1077.

Accordingly, we affirm the defendant's conviction and prison sentence, vacate the fine and remand for a new hearing for presenting valuation evidence as to the drugs seized in order to assess the street value fine.  The court should also give Gonzalez a $5-per-day credit against his fine for every day of incarceration prior to sentencing.  See 
People v. Cameron
, 189 Ill. App. 3d 998, 1011, 546 N.E. 2d 259, 267 (1989).

Affirmed in part and vacated in part; cause remanded with directions.  

GORDON and McBRIDE, JJ., concur.