■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT F. TRAVIS, JR., Appellant.—Mercure, J. Appeal from a judgment of the County Court of Washington County (Berke, J.), rendered May 5, 1989, convicting defendant upon his plea of guilty of the crimes of murder in the second degree and arson in the third degree.

On April 14, 1988, defendant gave an oral statement to State Police Investigators, subsequently reduced to a signed written confession, in which he admitted killing Josephine Brown the previous day and setting her house ablaze to conceal his act. Defendant was indicted for various counts of murder, arson, burglary and larceny as a result. Following an unsuccessful effort to obtain suppression of his inculpatory oral and written statements, defendant pleaded guilty to murder in the second degree and arson in the third degree in full satisfaction of the charges and was sentenced to concurrent prison terms aggregating 17 years to life. Defendant now appeals, contending only that County Court erred in denying his motion to suppress.

The essential facts as established in the *Huntley* hearing on defendant's motion to suppress his statements may be briefly stated. On April 14, 1988, State Police Investigators John Liptak and William Bragin received orders to find defendant, previously identified and questioned as one of the first persons at the scene of the crime, and to bring him back to the State Police substation in the Town of Malta, Saratoga County. Defendant was located at his grandfather's house and, according to Liptak, agreed to accompany the investigators. After patting him down, Liptak and Bragin drove defendant to the substation, arriving at approximately 2:30 P.M. Defendant was taken to a room and, except for brief interruptions, was continuously questioned by Investigator Curt Lohrey until 6:30 P.M. Defendant was then interviewed in the same room

by Investigator Dennis Conway for an additional four hours, until 10:30 P.M. It was during the second interview that defendant first made inculpatory statements. Sometime between 11:00 and 11:30 P.M. defendant signed a nine-page confession.

Following the hearing, County Court rendered a detailed written decision in which it rejected defendant's contention that the statements were the product of an unlawful arrest, finding instead that defendant was not in police custody at the time the statements were made. Confronted with conflicting testimony with respect to numerous relevant facts, County Court in each instance credited the testimony of police investigators over that of other witnesses, including defendant. Thus, it determined that defendant voluntarily accompanied Liptak and Bragin to the substation for questioning, was not handcuffed* during the trip to the substation, was advised of his *Miranda* rights by Lohrey and Conway, never requested an attorney and was provided with something to eat at the substation. The numerous inconsistencies in the hearing testimony notwithstanding, and giving due deference to the findings of the hearing court *(see, People v Prochilo,* 41 NY2d 759, 761; *People v Yukl,* 25 NY2d 585, 588, *cert denied* 400 US 851; *People v Armstead,* 98 AD2d 726), we conclude from our consideration of the undisputed facts that defendant's detention was custodial in nature.

It is well settled that issues concerning police custody are not determined by the individual defendant's subjective beliefs; rather, the determinative test is "whether a reasonable person, innocent of any crime, would have felt free to leave" *(People v Harris,* 48 NY2d 208, 215; *see, People v Yukl, supra,* at 589; *People v Hopkins,* 86 AD2d 937, 938, *affd* 58 NY2d 1079). Factors to be considered in determining whether an individual is in police custody include: "the amount of time he spent with the police * * * whether his freedom of action was restricted in any significant manner by the authorities * * * the location at and the atmosphere under which he was questioned * * * the degree of cooperation which he exhibited * * * whether he was apprised of his constitutional rights

---

* Bragin was not called to testify at the *Huntley* hearing and Liptak stated that he could not recall whether defendant was placed in handcuffs. County Court rejected as incredible the testimony of defense witnesses that defendant was placed in handcuffs and based its contrary finding on prosecution testimony that defendant was not wearing handcuffs when he was taken into the substation.

* * * and whether the questioning was investigatory or accusatory in nature" *(People v Bailey,* 140 AD2d 356, 358).

·Applying these principles to the uncontroverted proof adduced at the hearing, we note, first, that defendant was in the company of the police for approximately 9½ hours prior to making the inculpatory statements. Although it is clear that "[e]ven an interview of extended duration may be noncustodial" *(People v Johnson,* 91 AD2d 327, 330, *affd* 61 NY2d 932), the duration of interrogation is a factor to be considered. Second, the interviews were conducted at a State Police substation several miles from defendant's residence, by two investigators in succession, without change of locale and with only brief interruptions. Third, the acknowledged actions of State Police personnel belie the position that defendant was not in custody. There is no dispute that defendant was frisked before being placed in the police vehicle. Additionally, the uncontroverted evidence was that at the time defendant was taken from his grandfather's home, he was wearing only a tee shirt, slacks and slippers. Defendant testified that before he got into the police car he told Bragin that he wanted to go back into his grandfather's house to get his shirt, shoes and cigarettes and was told he could not. Only Bragin was in a position to refute this evidence and, as noted, the People did not call him to testify. Conway himself testified that on those occasions when he left the interview room a uniformed guard was stationed next to the doorway and that when defendant left to use the toilet facilities he was accompanied by a uniformed officer. Fourth, defendant's father, Robert Travis, Sr., went to the substation during the interrogation of defendant, remained for at least one hour, was interviewed by State Police officers and did not see defendant. Although County Court rejected as incredible Travis' testimony that he was not permitted to see his son and that he was told there was no need to obtain an attorney for him, the record discloses no other reason for his trip to the substation. Notably, there is no evidence that investigators had requested his presence there. Finally, none of the investigators testified that defendant was advised that he could terminate the interview and leave if desired at any time during the 9½ hours he was in the company of the police, and Liptak admitted that at the time they were sent to locate him defendant was a "strong suspect".

The relevant factors here include the duration and locale of the questioning, the fact that defendant was not permitted to get his shoes and a shirt and was frisked when Liptak and

Bragin picked him up, and the isolation and constant observation of defendant while he was in the company of the police, a condition hardly indicative of freedom. Under these circumstances, a reasonable person not guilty of any crime would not have felt free to leave. Hence, County Court's conclusion that defendant was not in police custody at the time he made the inculpatory statements was in error.

Since defendant sought suppression of the oral and written statements upon the ground that they were the product of an unlawful arrest and detention, the initial burden was on the People to establish that the police had probable cause to take him into custody (see, People v Dodt, 61 NY2d 408, 415). It is undisputed, in fact conceded, that the People offered no proof in this regard. We reject the People's contention that they should be permitted a further hearing to present the missing evidence. Clearly, the People's failure to offer any evidence to establish the existence of probable cause for the arrest, detention or custodial interrogation of defendant was their own and was not caused by any error of law committed by County Court (see, People v Havelka, 45 NY2d 636, 643; People v Bryant, 37 NY2d 208, 211; cf., People v Crandall, 69 NY2d 459, 464). Thus, the People have not been "deprived of [their] one full opportunity to present evidence of the dispositive issues involved at the suppression hearing" (People v Havelka, supra). In these circumstances, there is no legal justification to afford the People a second chance (see, supra; People v Bryant, supra). Accordingly, our determination that defendant was in police custody requires suppression of the oral and written statements made by defendant to the State Police on April 14, 1988.

Judgment reversed, on the law and the facts, motion to suppress defendant's statements granted, and matter remitted to the County Court of Washington County for further proceedings on the indictment. Kane, J. P., Weiss, Levine, Mercure and Harvey, JJ., concur.